**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **NOT FOR PUBLICATION** |
| BEXIN REALTY CORPORATION, | Chapter 11 |
| Debtor. | Case No. 24-12080 (MG) |

**MEMORANDUM OPINION DENYING BEXIN REALTY'S MOTION TO
DISMISS AND GRANTING CATHAY BANK'S CROSS MOTION FOR
<u>APPOINTMENT OF CHAPTER 11 TRUSTEE</u>**

*A P P E A R A N C E S :*

**DAVIDOFF HUTCHER & CITRON LLP**
*Attorneys for Bexin Realty Corporation*
605 Third Avenue
New York, NY 10158
212-557-7200
By:    Robert Leslie Rattet, Esq.
       Craig M. Price, Esq.

**PRYOR CASHMAN LLP**
*Attorney for Cathay Bank*
7 Times Square
New York, NY 10036
212-421-4100
By:    Joseph A. Shifer, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is debtor Bexin Realty Corporation's (the "Debtor" or "Bexin")

*Motion for Order Dismissing Chapter 11 Case pursuant to Section 1112(b) of the Bankruptcy*

*Code* (The "Motion," ECF Doc. # 94).  The Motion  was filed indirectly in response to Cathay

Bank's ("Cathay") Ex Parte *Motion for An Order Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure Authorizing Subpoenas for Production of Documents and Oral Examination* (the "Rule 2004 Motion," ECF Doc. # 92.)  The Rule 2004 Motion seeks to compel by way of subpoena the production of documents and oral examinations under oath of several parties associated with the Debtor including Benaram Benaresh (a/k/a Gilbert Benaresh), Claudia Benaresh, and Jonathan Aghravi ("Aghravi") (collectively, the "Discovery Parties.")

Objections were filed against both the Motion and the Rule 2004 Motion.  With respect to the Motion, Cathay filed *Cathay Bank's (I) Objection to Debtor's Motion for Order Dismissing Chapter 11 Case Pursuant to Section 1112(b) of the Bankruptcy Code and (II) Cross-Motion for the Appointment of a Chapter 11 Trustee, or Alternatively, Converting Case to Chapter 7 Pursuant to Sections 1104(a) and 1112(b) of the Bankruptcy* Code (the "Objection," ECF Doc. # 101) and accompanying declaration of Joseph A. Shifer (the "Shifer Decl.," ECF Doc. # 102), to which the Debtor filed a response (the "Response," ECF Doc. # 104).

With Respect to the Rule 2004 Motion, the Debtor filed their *Objection to Cathay Bank's* Ex Parte *Motion for an Order Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure Authorizing Subpoenas for Production of Documents and Oral Examination* (the "Rule 2004 Objection," ECF Doc. # 93).  Cathay Bank filed the *Reply to Debtor's Objection to* Ex Parte *Motion for an Order Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure Authorizing Subpoenas for Production of Documents and Oral Examination* (the "Rule 2004 Reply," ECF Doc. # 97).

As set forth below and in the order accompanying this Memorandum Opinion (ECF Doc. # 109), the Court:

**DENIES** the Motion to Dismiss;

**GRANTS** Cathay's cross motion for the appointment of a Chapter 11 trustee; and

**DENIES** the Rule 2004 Motion **WITHOUT PREJUDICE.**

## I.   BACKGROUND

The Debtor filed for Chapter 11 relief on November 27, 2024 (the "Petition Date"). (Motion ¶ 8.)  The Debtor is operating and managing real property located at 24-26 and 28-30 West 125th Street, New York, New York 10027 (the "Property") as a debtor-in-possession under sections 1107 and 1108 of the bankruptcy code.  (*Id.*)  The Debtor is indebted to Cathay pursuant to a loan agreement dated October 22, 2022 (the "Loan Agreement") and a related Consolidated, Amended and Restated Note (the "Note") (collectively the "Cathay Loan") in the principal amount of at least $16,375,500.  (*Id* ¶ 9.)  The Cathay Loan is secured by the property.  (*Id.*)  The Debtor has defaulted on its obligations under the Loan Agreement; Cathay was owed as of the Petition Date no less than $17,408,971.73.  (*Id*. ¶ 10.)  Prior to the Petition Date, Cathay commenced a foreclosure action in New York state court (the "Foreclosure Action").  (*Id*. ¶ 11.)

Subsequent the Petition Date, the Debtor sought to retain Better Brokers, LLC (the "Broker") to assist the Debtor with the marketing, refinancing, and sale of the Property.  (*Id*. ¶ 12.)  On June 8, 2025, the Court entered orders authorizing the retention of the Broker (ECF Doc. # 59) and approving the Debtor's second amended plan (the "Plan," ECF Doc. # 56) (ECF Doc. # 60).  Bid procedures (the "Bid Procedures," ECF Doc. # 56) were approved by the court the next day (ECF Doc. # 61.)  Relevant here is that under the Plan the Debtor was required to "either: (i) complete a refinance the Property by the 'Deadline to Close' (as defined in the Plan) of May 30, 2025, or (ii) conduct a sale of the Property no later than 15 business days after the Deadline to Close in accordance with the Bid Procedures."  (Motion ¶ 14.)  The Deadline to Close was subject to three (3) thirty-day extensions, and in exchange for this the Debtor agreed

3

to pay $80,000.00 monthly in adequate protection payments and $20,000.00 monthly for Cathay's legal fees.  (*Id.* ¶ 15.)  The Deadline to Close was later extended to September 30, 2025, via stipulation.  (*Id*. ¶ 17; ECF Doc. # 73.)  Failure to comply with the sale obligations under the Plan and later stipulations would constitute default under the Plan.  (ECF Doc. # 73 ¶ 8.)

According to the Debtor, the Broker attempted to solicit bidders but was unsuccessful in finding bids near the outstanding $17.2 million on the Cathay Loan; the five bids received were all in the $10-$11 million range and deemed unacceptable.  (*Id*. ¶ 18.)  Cathay and the Debtor also failed to come to an agreement regarding refinancing the loan.  (*Id*. ¶ 19.)

As the building has not been sold, the parties have agreed to numerous interim cash collateral orders, the most recent of which was the *Tenth Interim Order Authorizing Use of Cash Collateral by Debtor Pursuant to 11 U.S.C. Section 363* (the "Tenth Cash Collateral Order" ECF Doc. # 86) entered January 29, 2026 and extending the authorized use of cash collateral through February 28, 2026.  While the parties indicated to the Court that they were seeking another interim cash collateral order during the February 25, 2026, status conference (Objection ¶¶ 27-28), the Debtor soon after informed Cathay that it was no longer seeking to sell the property (*id* ¶ 29).

After learning that the Debtor would no longer be attempting to sell the property, Cathay filed the Rule 2004 Motion claiming that it has not been provided with basic documentation, including copies of current residential leases and documents regarding the regulation status of the Property.  (Rule 2004 Motion ¶ 3.)  Cathay alleges that the failure to turn over these documents to bidders was a large reason for why bids were far below the anticipated $17 million.  (*Id*. ¶¶ 27-28.)  The Rule 2004 Motion also alleges that the daughter of Benaresh, Claudia

Benaresh (*id* ¶ 22), occupies a rent stabilized unit in the building with a two-year lease, no security deposit, and a monthly rent of $398.97, all while the prior tenant paid $3,050 a month in rent (*id* ¶ 29).  While the Debtor claimed that it has not provided this information due to privacy concerns for the tenants, Cathay alleges that the Debtor has not responded to requests to provide redacted versions of the current leases.  (*Id*. ¶ 30.)

Three days after Cathay filed the Rule 2004 Motion the Debtor filed its Motion to Dismiss.

### A.  The Motion to Dismiss

#### 1.  Debtor's Motion to Dismiss

The Debtor is seeking to dismiss the case under 11 U.S.C. § 1112(b), claiming that cause exists to dismiss the case because no further rehabilitation is required via this proceeding and dismissal would allow for Cathay to proceed in the Foreclosure Action.  (Motion ¶¶ 28-29.)  The Debtor claims that it can no longer meet the administrative burdens of the Case, that the Property is its sole asset or cause of action, and that it lacks the ability to reorganize.  (*Id*. ¶¶ 4, 23, 30.)

#### 2.  Cathay's Objection

Cathay objects to the Debtor's claim to establish cause to dismiss.  Cathay notes that the Debtor failed to support the conclusory statements and that the statements in the Motion regarding the failed sale process and refinancing efforts are disingenuous.  (Objection ¶ 36.)  Cathay argues that not only was a deal to restart the sale process in the offing in February (*id* ¶ 37) but that valuable assets remain in the estate, including causes of action against Benaresh related to his control over the debtor and nearly $220,000.00 in outstanding tenant receivables (*id* ¶ 38).  Cathay also submits that it will work with a Chapter 11 trustee to determine a workable cash collateral budget to ensure the estate remains solvent.  (*Id*. ¶ 39.)

Beyond arguing that cause does not exist to dismiss the case, Cathay argues that cause exists for the Court to appoint a Chapter 11 trustee ("trustee") under section 1104(a)(1) of the Code. (*Id*. ¶ 43.) According to Cathay, there are several reasons why cause exists to appoint a trustee:

- **Unauthorized Use of Cash Collateral**: The Debtor's authorization to use cash collateral terminated on February 28, 2026, per the Tenth Cash Collateral Order. According to Cathay, the Debtor has continued operating in Chapter 11 without seeking relief of the Court to use Cathay's cash collateral, which constitutes "substantial harm" to Cathay and is grounds for appointing a trustee. (*Id*. ¶ 47.)

- **Failure to Timely Pay Taxes**: Cathay alleges that the Debtor's failure to pay property taxes, currently owing more than $90,000 in post-petition taxes, constitutes cause to appoint a trustee. (*Id*. ¶ 49 (citing ECF Doc. # 91 (listing post-petition taxes past due in the amount of $90,455).)

- **Unauthorized Retention of Professionals**: The Debtor retained Aghravi, principal of JBA Equites and alleged by Cathay to be the nephew of Benaresh, to act as a loan broker to refinance the Debtor's loan, obtain appraisals of the Property, and coordinate with the lenders to obtain term sheets. The Debtor did not receive authorization from the Court to employ Aghravi. (*Id*. ¶ 52.)

- **Failure to Disclose Insider Payments**: The Debtor, while representing in each of its Monthly Operating Reports ("MORs") that it was not making payments to insiders, had been making payments to Benaresh for managing the Property pursuant to a January 30, 2014, Property Management Agreement. (*Id*. ¶ 55.) The Debtor had been accounting for the fee in the budgets approved under the many interim cash collateral agreements. (*Id*.)

- **Failure to Timely File MOR**: Cathay alleges that fifteen of the sixteen MORs filed by the Debtor were filed late, with many missing important information such as balance sheets and statements of profits and losses. (*Id*. ¶ 56.)

- **Hindering Reorganization**: The Debtor hindered the sale process by failing to maintain and provide basic financial documents to both Cathay and prospective bidders. (*Id*. ¶ 58.) Cathay posits that they received depressed bids for the Property due to concerns from bidders who were not provided with the customary documents and information expected during a property sale. (*Id*. ¶ 59.)

- **Inadequate Record Keeping**: The Debtor's failure to maintain and/or provide basic documentation such as current lease agreements are indicative of inadequate record keeping. Additionally, the Debtor has yet to provide Cathay documentation regarding the regulation status of the Property, which is of

particular interest given Benaresh's daughter residing in an allegedly rent-stabilized apartment for approximately $2,700.00 per month less than the prior tenant.  (*Id*. ¶¶ 60-61.)

- **Breach of Fiduciary Duties**: Cathay alleges that the Debtor has failed to investigate any potential causes of action and as a result "manifestly could cause the estate to forfeit proceeds to which it would otherwise be entitled. Taken alone, the  Debtor's failure to investigate avoidance actions signals a breach of fiduciary duty sufficient to justify a finding of 'cause' under 1104(a)(1)." (*Id*. ¶ 63 (citing *In re Sillerman*, 605 B.R. 631, 648 (Bankr. S.D.N.Y. 2019)).)

Cathay additionally argues that even if the Court fails to find cause, the appointment of a trustee is in the best interest of the creditors and can therefore be appointed under section 1104(a)(2).  (*Id*. ¶ 65.)  Cathay first argues that the Debtor lacks credibility as its principal Benaresh has allowed his daughter to reside in the Property for far below market rate (*id* ¶ 67), along with failing to maintain books and accurate records (*id* ¶¶ 68-69).  Second, Cathay argues that as the Debtor is unwilling to rehabilitate and restructure, the void must be filled by the appointment of a trustee.  (*Id*. ¶ 71.)  Next, Cathay lacks confidence that the Debtor will do anything constructive with its assets due to the Debtor's lack of cooperation with Cathay, gross mismanagement of the assets, and failure to comply with the Code.  (*Id*. ¶ 72.)  Finally, Cathay argues that the benefits of appointing a trustee outweigh the costs: not only has Cathay's lack of faith in the Debtor to manage the estate suggest that the need for a trustee is great, Cathay believes that there are actions that the trustee can take—including through pursuing potential avoidance actions—that will lead to recoveries for creditors and ensure the estate remains solvent.  (*Id*. ¶¶ 74-76.)

If the Court declines to appoint a trustee, Cathay argues that the Court should instead convert the case to Chapter 7 under section 1112(b)(1).  Bankruptcy courts are afforded significant discretion to find cause to convert a case pursuant to section 1112(b), and Cathay believes all the reasons that support cause for appointing a trustee are reasons for why this case

should alternatively be converted to Chapter 7. (*Id*. ¶¶ 80-81.) Cathay also asserts the following

in support of conversion:

- **Preferential Payments**: While it is unclear to what extent the Debtor has conducted a preference analysis as such information has not been included in the SOFA, the Debtor has been making payments to Benaresh since 2014, and it is likely that some payments were received prior to the Petition Date. (*Id*. ¶ 81.)

- **Loss of Rights on Dismissal**: Cathay states that they would be prejudiced upon dismissal through the loss of adequate protection payments. (*Id*. ¶ 82.)

- **Risk of Refiling**: The Debtor, while claiming that Cathay can resume the Foreclosure Action, does not make any assurances that it will not refile for bankruptcy. (*Id*. ¶ 83.) Cathay views the Debtor's past actions as instructive and fears that it will file another bankruptcy case to frustrate the Foreclosure Action. (*Id*.)

- **Assets Available for Creditors**: Cathay argues that, absent a Chapter 11 trustee, a Chapter 7 trustee would be the best able to monetize the Property, collect accounts receivable, and uncover additional assets for creditors. (*Id*. ¶ 84.)

- **Superior Non-Bankruptcy Forum**: Cathay believes that the Court is the best forum to resolve the ultimate disposition of the Property. (*Id*. ¶ 85.)

- **Estate Property to be Administered**: Cathay argues that liquidation under Chapter 7 will result in a better sale of the Property than a foreclosure sale through public auction, which is what would occur if the Foreclosure Action were to continue. (*Id*. ¶ 86.)

3. Bexin's Response

The Debtor disputes Cathay's claims regarding the ability of the Debtor to reorganize.

The Debtor claims that Cathay's offer to restart the sale process does not mean the case can

proceed administratively, and that its statements that claims may exist against Benaresh are

unsubstantiated. (Response ¶ 10.) The Debtor also disputes Cathay's claims regarding tenant

receivables as Cathay omitted crucial information: 80% of the $220,000 in receivables relates to

four tenants, two of which are in active litigation with the Debtor for nonpayment, and a third of

which was evicted for nonpayment. (*Id*. ¶ 11.) The Debtor claims that all of this information has

8

been included in the MORs and should be known by Cathay. (*Id.*) The Debtor also disputes that

Cathay would be able to work with a Chapter 11 trustee on a cash collateral budget to ensure the

estate remains solvent as the estate ultimately lacks the funds necessary, funds it would have had

Cathay not required the debtor to pay over $100,000 a month in interest and attorneys' fees. (*Id.*

¶ 12.)

The Debtor additionally disputes that cause exists to appoint a trustee—Cathay had

waited until its sale effort failed to allege mismanagement of the estate. (*Id.* ¶ 14.) Cathay's

silence included allowing the Debtor to manage the Property at a below-market rate which the

Debtor alleges was done in hopes of receiving full payment through a sale or refinancing, all

while receiving over $100,000 a month from the Debtor. (*Id.*) The Debtor believes that Cathay

has failed to meet its burden based on the following factors:

- **Cash Collateral**: While the parties had agreed to ten prior interim cash collateral orders, Debtor alleges that Cathay made numerous information demands that were ultimately unworkable during the failed negotiations for the eleventh. (*Id.* ¶ 15.) Given the failure of the sale process, the Debtor has moved to dismiss. While Cathay cites to cases asserting the unauthorized use of cash collateral may support cause to appoint a trustee, none of them involve a situation where the Debtor has moved to dismiss the case. The Debtor would no longer need to use cash collateral if the case is dismissed. (*Id.*)

- **Payment of Taxes**: The Debtor claims that it is unable to pay its real estate taxes due to the substantial adequate protection payments being made to Cathay. (*Id.* ¶ 16.)

- **Unauthorized Retention of Professionals**: The Debtor disputes that Aghravi was retained or paid by the estate. (*Id.* ¶ 17.)

- **Failure to Disclose Insider Payments**: The Debtor notes that the payments to Benaresh were disclosed in the Debtor's P&L Statements. These were cited by Cathay, inherently undercutting their argument. (*Id.* ¶ 18.)

- **Failure to Timely File MORs**: While the Debtor admits some MORs were filed late, the Debtor is currently up to date in its filings. Cathay does not demonstrate how it was prejudiced in such filings. (*Id.* ¶ 19.)

- **Hindering Reorganization**: The Debtor states that if Cathay believed that the lack of information provided by the Debtor during the sale process would have hindered the sale process, then Cathay should have raised this at the time. (*Id*. ¶ 20.) Cathay is just now blaming the Debtor for other market factors.

- **Inadequate Record Keeping**: The Debtor states that Cathay's allegation is false. The Debtor states that it has provided all leases to Cathay through an online portal that could not be downloaded due to PII issues. (*Id*. ¶ 21.) Additionally, Debtor alleges that while Cathay requested information regarding the Debtor's renting at rent stabilized rates, the Debtor has made Cathay aware that they do not possess these records but are renting the units in line with New York City (the "City") regulations regarding rent stabilization. (*Id*. ¶ 22.)

- **Breach of Fiduciary Duties**: The Debtor disputes Cathay's assertion that Benaresh being paid for managing the building effectively caused a breach of fiduciary duty. They also dispute the fact that Benaresh's family residing in a rent stabilized unit at below market rate suggests that "some untoward act has taken place." (*Id*. ¶ 23.)

- **Benefits to Creditors**: While Cathay claims that the appointment of a trustee would benefit creditors, they do not acknowledge that the statement is self-serving – they are the primary creditor, and they do not mention how the trustee will benefit unsecured creditors, if at all. (*Id*. ¶ 24.) The Debtor reasserts that any effort to rehabilitate itself will, like the past efforts, fail, and it would be best to continue the Foreclosure Action. (*Id*. ¶ 25.)

In respect to Cathay's effort to establish cause to convert the case to Chapter 7, the Debtor reasserts the above in addition to noting that Cathay's additional allegations also fail to establish cause. They first claim that the management payments to Benaresh were not preferential payments, but instead were contemporaneous value exchanged for services. (*Id*. ¶ 29.) Second, Cathay cannot claim to suffer prejudice by no longer receiving the adequate protection payments as that is something only afforded to them while the Debtor is in bankruptcy; once the case is dismissed, Cathay will be able to exercise its right to repossess the Property. (*Id*. ¶ 30.) The Debtor also claims that it has made no indication of refiling for Chapter 11 if the case were dismissed and Cathay's claim to the contrary is unsupported. (*Id*. ¶ 31.) Finally, the Debtor does not need to be in bankruptcy for Cathay to collect accounts

receivable or other assets from the Debtor; it can do so in the Foreclosure Action.  (*Id* ¶ 32.)

Cathay does not have a right for the case to continue in this Court just to collect adequate

protection payments.  (*Id* ¶ 33.)  The alleged potential of obtaining a better price for the property

is not enough to convert the case to Chapter 7.

### B.  The Rule 2004 Motion

As noted above, Cathay initially filed the Rule 2004 Motion seeking documents from the

Debtor regarding the value of the Property and the Debtor's mismanagement of the estate.  (Rule

2004 Motion ¶ 36.)  It seeks documents and to depose the Discovery Parties as they alone

possess key information regarding the Property.  (*Id*.)  Cathay argues that it does not possess an

alternative means of obtaining these documents, and the denial of this motion would impose

undue hardship on Cathay as it is otherwise unable to properly assess the value of the Property.

(*Id*.)

In its objection to the 2004 Motion, the Debtor claims that Cathay lacks standing to bring

a claim for mismanagement of the estate as it derives from the Debtor's estate; only a trustee

would have standing to bring such an action.  (Rule 2004 Objection ¶ 9.)  Additionally, the

Debtor claims that the Rule 2004 Motion would impose unduly burdensome discovery

obligations on the Debtor, including obtaining information from leases more than thirty years

ago.  (*Id*. ¶¶ 15-17.)

In a short reply, Cathay argues that the Debtor only provided "red herrings" for why the

Rule 2004 Motion should not be granted.  (Rule 2004 Reply ¶ 1.)  First, Cathay claims that an

argument regarding standing to bring the cause of action does not implicate issues of Rule 2004,

which can be brought by "any party in interest."  (*Id*. ¶¶ 3-4 (citing FED. R. BANKR. P. 2004(a)).)

Additionally, Cathay disputes the Debtor's claim that the request is unduly burdensome; if the

Debtor argues that they have already produced some of the documents, then it cannot be so hard to produce them again. (*Id.* ¶ 5.) Lastly, Cathay reasserts that there is good cause to grant the motion, as Cathay will face undue hardship through being unable to properly assess the value of the Property and determine if there are claims for mismanagement of the estate. (*Id*. ¶ 7.)

## II.   LEGAL STANDARD

### A. Motion to Dismiss

"Unlike chapter 12 and 13 debtors, 'a Chapter 11 debtor does not enjoy an absolute right to a dismissal of its bankruptcy.'" *In re Just Plumbing & Heating Supply, Inc*, 2011 WL 4962993, at *2 (Bankr. S.D.N.Y. Oct. 18, 2011) (quoting *In re Kingsbrook Dev. Corp.*, 261 B.R. 378, 379 (Bankr. W.D.N.Y. 2001)). A court can dismiss a Chapter 11 proceeding under section 1112(b)(1) of the Code, provided that the movant establishes cause. 11 U.S.C. § 1112(b)(1). Section 1112(b)(4) defines cause under the subsection using the following sixteen factors:

> (A): substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
> (B): gross mismanagement of the estate;
> (C): failure to maintain appropriate insurance that poses a risk to the estate or to the public;
> (D): unauthorized use of cash collateral substantially harmful to 1 or more creditors;
> (E): failure to comply with an order of the court;
> (F): unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
> (G): failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;
> (H): failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);
> (I): failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;
> (J): failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;

12

(K): failure to pay any fees or charges required under chapter 123 of
title 28;
(L): revocation of an order of confirmation under section 1144;
(M): inability to effectuate substantial consummation of a confirmed
plan;
(N): material default by the debtor with respect to a confirmed plan;
(O): termination of a confirmed plan by reason of the occurrence of
a condition specified in the plan; and
(P): failure of the debtor to pay any domestic support obligation that
first becomes payable after the date of the filing of the petition.

11 U.S.C. § 1112(b)(4).  The Court is free to consider other factors as Section 1112(b)(4) is a

non-exclusive list.  *In re UFP Holding, I, LLC*, 675 B.R. 302, 307 (Bankr. S.D.N.Y 2025).  "The

moving party has the burden of demonstrating cause for dismissal or conversion." *In re Just

Plumbing*, 2011 WL 4962993, at *2.

B.  **Appointing a Chapter 11 Trustee**

Under section 1104(a), any party in interest can move for the appointment of a trustee

"for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of

the debtor by current management."  11 U.S.C. § 1104(a)(1).  Beyond these four factors, courts

have considered other factors relevant for the inquiry including: "conflicts of interest, including

inappropriate relations between corporate parents and the subsidiaries; misuse of assets and

funds; inadequate record keeping and reporting; various instances of conduct found to establish

fraud or dishonesty; and lack of credibility and creditor confidence." *In re Ashley River

Consulting, LLC*, 2015 WL 1540941, at *9 (Bankr. S.D.N.Y. Mar. 31, 2015) (citing *In re

Altman,* 230 B.R. 6, 16 (Bankr. D. Conn. 1999).  If the court were to find that cause does exist

for the appointment of a trustee, then the trustee must be appointed: "there is no discretion; an

independent trustee *must* be appointed." *In re Ashley River*, 2015 WL 1540941, at *9 (quoting *In

re V. Savino Oil & Heating Co., Inc.,* 99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989)) (emphasis

original).

13

A trustee can also be appointed if it is in the "best interest of the creditors."  11 U.S.C. § 1104(a)(2).  *See In re Ancona*, 2016 WL 7868696, at \*12 (Bankr. S.D.N.Y. Nov. 30, 2016) ("Even if a court does not find that cause exists to appoint a chapter 11 trustee under section 1104(a)(1), the court may still appoint a trustee under section 1104(a)(2) if such appointment is in the interest of creditors, any equity security holders, and other interests of the estate[.]"). While the 'best interests' standard might seem less stringent than the 'for cause' standard, the standard requires the court to find that the appointment of a trustee is in the best interest of *all* interested constituencies – a creditor cannot obtain the appointment of a trustee if it were to disenfranchise other interests.  7 COLLIER ON BANKRUPTCY ¶ 1104.02 (16th 2026).  Factors to consider when determining whether appointing a trustee is in the best interest of creditors and the estate include: "(a) the trustworthiness of the debtor; (b) the debtor's past and present performance and prospects for rehabilitation; (c) the confidence—or lack thereof—of the business community and of creditors in present management; and (d) the benefits derived from the appointment of a trustee, balanced against the cost of the appointment."  *In re Sillerman*, 605 B.R. at 652 (citing *In re Ashley River*, 2015 WL 1540941, at \*8).

### III.  <u>DISCUSSION</u>

#### A.  The Motion to Dismiss

The Motion is incredibly light on reasons for why there is cause to dismiss the case or for why the interests of both creditors and debtors will best be served through dismissal.  Any reasons given in the Motion are largely supported with conclusory statements: "No Creditor will benefit from the cost and expenses of a second sales process other than Cathay Bank.  . . . Other than the Property, the Debtor has no assets to liquidate or further administer in this Chapter 11 Case or a Chapter 7 proceeding."  (Motion ¶¶ 29-30.)  The Response claims to

support the Debtor's argument for cause, such as disputing the ideas that there remains both valuable claims against Benaresh and rent receivables to collect.  (Response ¶¶ 10-11.)  The Response also claims that the bankruptcy estate is administratively insolvent, blaming in large part the adequate protection and attorneys' fee payments the Debtor has been making.  (*Id*. ¶ 12.)

Yet, the Debtor again fails to provide anything other conclusory statements.  For example, the Debtor claims that the efforts regarding the evicted tenants have been documented in the MORs, yet they do not cite to any MOR with this information.  They claim to have received a DHCR report from the City (*id* ¶ 11), but that report is not included with their papers.  Indicating to the Court which MORs are relevant for analysis and attaching the DHCR report as an exhibit are simple things that you would think a party trying to meet their burden of proof would do.  The Debtor has done none of this.

The Debtor, as movant, has the burden of proof and they have failed to meet it.  The Court **DENIES** the Motion to Dismiss.

### A.  Appointing a Chapter 11 Trustee for Cause

To determine if there is cause to appoint a Chapter 11 trustee, the Court will examine the factors addressed in the Response and Objection.

### 1.  Unauthorized Use of Cash Collateral

Failure to comply with a cash collateral order constitutes cause under section 1104(a)(1).  *See Sillerman*, 605 B.R. at 645-46 (failing to comply with cash collateral order constitutes "cause" under section 1104(a)(1)); *see also In re AG Serv. Centers, L.C.*, 239 B.R. 545, 550 (Bankr. W.D. Mo. 1999) ("[s]ection 1104(a)(1) does not specifically list 'noncompliance with court orders' or 'failure to comply with the Bankruptcy Code' as cause for the appointment of a trustee, but such conduct clearly falls within the scope circumscribed by the statute – either as

15

'similar cause' or as a permutation of 'incompetence, or gross mismanagement.'") The Debtor

does not dispute that it used cash collateral after their authorization to do so terminated on

February 28, 2026. The Debtor only claims that it did so because of an inability to refinance

with Cathay, and the inability ultimately moved it to seek to dismiss the bankruptcy.

Notwithstanding the fact that this timeline appears suspect given how the Debtor represented to

the Court with Cathay at the February 25, 2026 status conference that they were negotiating a

new interim cash collateral order, and that nearly 1 (one) month passed between the termination

of the use of cash collateral and the filing of the Motion (which itself only occurred after Cathay

filed the Rule 2004 Motion), the Debtor admits to the unauthorized use of cash collateral.

There is cause to appoint a trustee due to the Debtor's unauthorized use of cash collateral.

### 2. Late Payment of Taxes

The failure to timely pay taxes after the petition date can constitute cause to appoint a

trustee. *See Mfrs. and Traders Tr. Co. v. Morningstar Marketplace, Ltd. (In re Morningstar

Marketplace, Ltd.),* 544 B.R. 297, 306 (Bankr. M.D. Pa. 2016) (failure to pay all taxes owed after

the petition was filed support appointing a trustee under section 1112(b)); *see also In re Euro-

Am. Lodging Corp.*, 365 B.R. 421, 426 (Bankr. S.D.N.Y. 2007) (stating that a "chronic failure to

pay taxes" constitutes "gross mismanagement" under section 1104(a)(1)). The Debtor does not

dispute that it has been unable to pay taxes recently and that it owed taxes to the City prior to the

Petititon Date, instead blaming the payments the Debtor is making to Cathay as the reason for its

inability to pay taxes. This again is insufficient to deny Cathay's cross motion.

Cathay's showing supports finding cause to appoint a trustee.

### 3.    Unauthorized Retention of Professionals

Retaining professionals in noncompliance with the Code constitutes cause to appoint a trustee.  *See In re Sillerman*, 605 B.R. at 642 (cause was found where the debtor retained and paid professionals without court approval and was therefore in violation of section 327(a)).  Cathay alleges that Aghravi was retained to lead efforts to refinance the Cathay Loan and cites to email correspondence between Cathay and Aghravi which include such refinance discussions as support.  (*See* Shifer Decl. Ex. B.)  The Debtor claims that Aghravi has never been retained nor paid any amount from the estate for his work and that he solely assisted his uncle.

Cathay does not point to anything in the submitted budgets or other papers that indicate that Aghravi was paid through estate funds.  Without proof that Aghravi was compensated by the debtor and did not assist his uncle for free, Cathay is unable to meet its burden of proof on this factor to show cause.

### 4.    Failure to Disclose Insider Payments

"Failure by a debtor-in-possession to disclose material and relevant information to the Court and creditors or make required filings supports a finding of cause."  *In re Sillerman*, 605 B.R. at 643 (citing *In re V. Savino Oil & Heating*, 99 B.R. at 526).  While the Debtor was not clear in its disclosure of the management fee payments to Benaresh, the fee was disclosed; the Debtor's profit and loss statements include references to a "Management Fee" (*see*, e.g. ECF Doc. # 51 at 14 (the March 2025 profit and loss statement including a $4,2750 management fee)) which, per the Management Agreement provided by the Debtor to Cathay, would be "3% of the collected effective gross income, payable monthly" to the manager, Benaresh.  (Shifer Decl. Ex. C.)  Cathay has not shown good cause to appoint a trustee for failure to disclosure insider payments.

5.   Failure to Timely File MORs

28 CFR § 58.8 requires MORs in Chapter 11 cases to be filed "no later than the 21st day

of the month immediately following the reporting period covered by the MOR."  28 CFR §

58.8(e).  The MORs must contain supporting documentation including:

> (ii) Balance sheet containing the summary and detail of the assets,
> liabilities, and equity (net worth) or deficit of the estate. The estate's
> prepetition liabilities and retained earnings must be reported
> separately from the estate's postpetition liabilities and retained
> earnings; and
> (iii) Statement of operations (profit or loss statement) that compares
> the estate's actual performance with projected performance.

See 28 CFR § 58.8 (d).  The Debtor does not dispute that many MORs were filed late and that

they were missing the above documents, rather claiming that Cathay was not prejudiced by the

late filings.  Prejudice is not a factor in this analysis.  What is relevant here is that the numerous

late filings suggest that the Debtor has been mismanaging their affairs and supports finding cause

to appoint a trustee.  *See In re Ashley River*, 2015 WL 1540941, at *10 (the failure to timely file

monthly operating reports supported the Court's determination to appoint a trustee).

6.   Hindering Reorganization

"The job of a debtor-in-possession remains under the Code as that described by Judge

Friendly—to get the creditors paid."  *In re Pied Piper Casuals, Inc.,* 40 B.R. 723, 727 (Bankr.

S.D.N.Y. 1984) (citing *Grayson Robinson Stores, Inc. v. Securities and Exchange Commission,*

320 F.2d 940, 949 (2d Cir. 1963)).  Acting in a manner that hinders efforts to reorganize

constitutes cause to appoint a trustee as a breach of the debtor's fiduciary duty.  *In re Sillerman*,

605 B.R. at 650; *see also In re V. Savino Oil &* Heating, 99 B.R. at 526 ("[I]f the debtor-in-

possession defaults in this respect, Section 1104(a)(1) commands that the stewardship of the

reorganization effort must be turned over to an independent trustee.")  Here, the goal for the

18

parties was simple: sell the Property.  Yet, as evidenced from the documents provided by Cathay, the failure of the Debtor to provide the necessary documents to potential bidders was a driving force for the lower-than-desired bids.  (Shifer Decl., Exs. D, E.)  The Debtor does not claim that it *did* provide documents, only that the documents were not the reason the bids were so low, blaming "larger macroeconomic factors."  (Response ¶ 20.)  Even if the macroeconomic factors were a cause for the lower-than-desired bids, the Debtor did not provide this clearly crucial information to debtors.  The Debtor's actions here again constitute cause to appoint a trustee.

### 7.  Inadequate Record Keeping

Inadequate record keeping is another relevant factor to consider when determining if there is cause to appoint a trustee.  *In re Ashley River*, 2015 WL 1540941, at *9.  Cathay has requested information regarding the regulation status of the property, with attention being paid to the unit rented to Benaresh's daughter for far lower than the prior tenant.  (Shifer Decl. Exs. F, G (*compare* the Rent Roll dated as of September 1, 2025, showing a monthly rent of $3,050.00 for unit 31 *with* the lease excerpt for unit 31 showing a monthly rent of $398.97).)  The Debtor in response states that is renting the unit for far below the market rate to be in "line with City regulations" regarding rent stabilization but then claims that Cathay "has repeatedly been made aware that the Debor does not possess such records" being the documents indicating that the unit is rent stabilized.  (Response ¶ 22.)  Ignoring the fact that the Debtor's principal is renting a unit to his daughter at a nearly 90% discount from the prior tenant, not possessing the "required rent stabilization records" (*id*) is the type of inadequate record keeping that leads the Court to find cause to appoint a trustee.

8.    Breach of Fiduciary Duties

A debtor in possession owes a fiduciary duty to "protect and conserve estate property for the benefit of creditors (including a duty to avoid self-dealing *and to investigate and prosecute warranted avoidance actions*." *In re Sillerman*, 605 B.R. at 648 (citing *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 169 (Bankr. S.D.N.Y. 1990)) (emphasis added).  A breach of such duties constitutes cause to appoint a trustee.  *In re Ionosphere Clubs*, 113 B.R. at 169.  In *Sillerman*, the court noted that the debtor-in-possession, who controlled the estate since the case was initiated, "has not brought, much less investigated, a single avoidance action," which coupled with the debtor's declaration that they would not bring any such actions, constituted "a flagrant dereliction of his fiduciary duty to the estate."  *In re Sillerman*, 605 B.R. at 648.  The Debtor does not dispute that it has neither brought nor investigated avoidance actions, and while not declaring that they would not bring such actions, the Debtor is obstinate that no self-dealing has taken place.  (Response ¶ 23 ("Cathay alleges that because a member of Benaresh's family is occupying a rent stabilized unit, that some untoward act has taken place."))  Whatever has occurred regarding that apartment does nothing to change the fact that the Debtor has breached its fiduciary duty to investigate avoidance actions, further showing that cause exists to appoint a trustee.

**B.  Appointing a Chapter 11 Trustee in the Best Interests of the Creditors**

As with appointing a trustee for cause, it is in the best interest of the creditors to appoint a Chapter 11 trustee.  In examining the factors enumerated in *Sillerman*, they all suggest that appointing a trustee will benefit the estate.  First, the Debtor has not shown themselves to be a trustworthy actor.  In response to allegations regarding renting units to the principal's daughter far below the previously rented rate, the Debtor takes issue with Cathay suggesting an 'untoward

20

act' has occurred but fails to give a semblance of evidence as to why the Court should trust them that the lease is above board.  The Debtor claims that the unit is rent stabilized but cannot provide the court with the records.  The Debtor claims it received a DCHR report from the City, but that report has not been provided.  The Debtor has filed MORs late lacking requisite information.  None of this gives the Court trust in the Debtor or its principals.

The Debtor has abandoned efforts of rehabilitating the estate.  (Motion ¶ 30 ("There is no reason left for this Chapter 11 case to continue or for the Debtor to remain in bankruptcy."))

Third, Cathay has no confidence in the Debtor to continue managing the bankruptcy. Cathay cites to the Debtor's "lack of cooperation, gross mismanagement of the assets, failure to comply with the Bankruptcy Code, Bankruptcy Rules and Court orders, inability to consummate a confirmed Chapter 11 plan, inability to provide adequate diligence to prospective purchasers of the Property, and failure to maintain accurate books and records."  (Objection ¶ 72.)

The fourth factor, the benefits deriving from the appointment balanced with the costs, again supports appointing a trustee.  The Debtor's argument that the Court should not require the estate to incur the expense of the trustee in comparison to allowing the Foreclosure Action to continue is unpersuasive as, noted above, the Motion to Dismiss is denied.  In addition, the cost of the administrative expense alone is not enough for the court to decline to appoint a trustee.  *In re Ashley River*, 2015 WL 1540941, at *12 (citing *In re V. Savino Oil & Heating*, 99 B.R. at 527-28 ("Finally, the Debtor contends that benefits conferred by a trustee are not commensurate to the attendant expense and that the appointment of a trustee may jeopardize the rehabilitation effort. These arguments are also without merit."))  This is in comparison to the potential avoidance actions that the Debtor has yet to investigate, along with the ultimate sale of the property which the trustee will undoubtably be better at effectuating than the Debtor.

Clearly, creditors will benefit from the appointment of a Chapter 11 trustee.

Given the forgoing reasons, the Court **GRANTS** Cathay's cross motion to appoint a Chapter 11 trustee.

### C.  Converting this Case to Chapter 7

As the Court grants Cathay's cross motion to appoint a Chapter 11 trustee, it does not need to consider whether to convert the case to Chapter 7.

### D.  Rule 2004 Motion

With the appointment of a Chapter 11 trustee, the Court **DENIES** the Rule 2004 Motion **WITHOUT PREJUDICE.**  The Court recognizes Cathay's need for the documents to properly assess the value of the Property.  Cathay and the newly appointed trustee should meet and determine their next steps, which can include any new discovery sought in the Rule 2004 Motion.

## IV.    CONCLUSION

As stated above, the Court:

**DENIES** the Motion to Dismiss;

**GRANTS** Cathay's cross motion for the appointment of a Chapter 11 trustee; and

**DENIES** the Rule 2004 Motion **WITHOUT PREJUDICE.**

The United States Trustee is directed to appoint a Chapter 11 trustee.

**IT IS SO ORDERED.**

Dated:    April 28, 2026
          New York, New York

*Martin Glenn*
          MARTIN GLENN
          Chief United States Bankruptcy Judge

22